IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE PHOENIX INSURANCE COMPANY OF AMERICA | : : : : : : : : : | CIVIL ACTION<br><br>No. 24-1056 |
| v. | | |
| PING AN PROPERTY & CASUALTY INSURANCE COMPANY OF CHINA, LTD., et al. | | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                        September 30, 2025

    Defendant Ping An Property & Causalty Insurance Company of China, LTD. ("Ping An") has filed a motion to compel arbitration and stay litigation pending the outcome of an arbitration between itself and Plaintiff Phoenix Insurance Company of America ("Phoenix"). Because whether Ping An may properly enforce an arbitration clause in an agreement against Phoenix is a threshold question of arbitrability, and because the agreement delegates such questions to the arbitrator, the Court grants the Motion.

    Plaintiff Phoenix brings an action against Defendants Ping An, Zhuhai Zeshui Electrical Appliance Co. Ltd. formerly known as Guangdong Meiman Group Zhuhai Meiman Electrical Appliance Co. LTD. ("Meiman"), and McLarens, LLC related to an alleged failure to defend and indemnify.[1] Phoenix's claims are centered on the relationship between Defendant Meiman and non-party Sensio, Inc., stemming from an October 20, 2015 Master Supply Agreement ("MSA") which contains an arbitration clause. MSA, ECF No. 31-3. In the MSA, Meiman agrees to defend and indemnify Sensio. *Id.* art. 9. The MSA also contains an arbitration clause. *Id.* art. 12.2.

---

[1] Defendant McLarens, LLC does not oppose the Ping An's Motion to Stay and Compel Arbitration. ECF No. 34. Defendant Meiman has not responded to the Motion.

Defendant Ping An moves to compel arbitration, arguing the MSA mandates arbitration for Phoenix's claims. Phoenix argues the arbitration clause does not apply here since Phoenix and Ping An did not sign the MSA.

"The Federal Arbitration Act requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 178 (2019). The FAA "establishes a strong federal policy in favor of the resolution of disputes through arbitration." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003). In addition to having an arbitrator decide the merits of any particular dispute, parties may also agree to delegate questions of arbitrability, "such as whether the parties have agreed to arbitrate." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019). In those instances, "a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Id.* at 69. That delegation requires "clear and unmistakable" evidence of the parties' intent. *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

As a preliminary matter, the Court must determine whether to evaluate Defendants' motion to compel arbitration under a 12(b)(6) standard or under the summary judgment standard. In *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, the Third Circuit clarified the applicable standard as follows:

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

716 F.3d 764, 776 (3d Cir. 2013) (citations and quotations omitted).

2

The existence of an agreement to arbitrate is not apparent from the face of Phoenix's Complaint, which does not mention the MSA arbitration clause.  The Complaint, however, repeatedly references the MSA as the basis for some of its claims.  Regardless, Phoenix does not dispute the validity of the MSA or its arbitration clause, nor has Phoenix requested an opportunity to take discovery regarding the existence of an arbitration agreement.  Rather, Phoenix argues the arbitration clause cannot be enforced because both itself and Defendant Ping An are non-signatories to the MSA.  Because Phoenix does not seek discovery at this time, the Court will consider Ping An's motion under the summary judgment standard on the existing record, viewing the evidence in the light most favorable to Phoenix.  *See Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 228 (3d Cir. 2012) (holding the existence of an agreement to arbitrate may be decided by the court as a matter of law when "there is no genuine dispute as to any material fact" regarding the arbitration agreement).

Phoenix does serve as a signatory to the MSA because it is a subrogee for Sensio, one of the original signatories. Sensio had obtained an insurance policy from Phoenix.  Compl. ¶ 26, ECF No. 1.  When Sensio faced legal action due to injuries from devices it had distributed, Phoenix defended Sensio in these actions and settled those claims.  *Id.* ¶¶ 62–169.  Phoenix now seeks to recover the costs it allegedly incurred in defending and settling these actions on behalf of Sensio. *Id.* pp. 35-38.

While Phoenix did not describe itself as a subrogee, the Court finds it became a subrogee by paying for Sensio's defense and asserting Sensio's potential claims in the above action.  "An insurer, including an excess insurer, upon discharging an insured's liability, can become equitably subrogated and may assert its insured's claims against third parties, including a primary insurer." *Greater New York Mut. Ins. Co. v. N. River Ins. Co.*, 85 F.3d 1088, 1095 (3d Cir. 1996) (citations

omitted). "The subrogee, having stepped into the shoes of the subrogor, is entitled to assert all of the subrogor's rights and claims against the responsible third party." *In re Frescati Shipping Co., Ltd.*, 886 F.3d 291, 309 (3d Cir. 2018), *aff'd sub nom. CITGO Asphalt Ref. Co. v. Frescati Shipping Co., Ltd.*, 589 U.S. 348 (2020). Additionally, a third party who defends an action against the subrogee "is entitled to assert every defense it otherwise could have raised against the subrogor." *Id.* This principal extends to the application of arbitration clauses. *See, e.g.*, *Flexi-Van Leasing, Inc. v. Through Transp. Mut. Ins. Ass'n., Ltd.*, 108 F. App'x 35, 40 (3d Cir. 2004); *Amkor Tech., Inc. v. Alcatel Bus. Sys.*, 278 F. Supp. 2d 519, 523 (E.D. Pa. 2003) ("So, too, the arbitration clause binds AGF, which, as ABS's insurer, stands in the shoes of its client."). Therefore, Phoenix as a subrogee of Sensio is covered by the MSA and the arbitration clause.

There is clear and unmistakable evidence that the MSA delegates threshold questions of arbitrability to the arbitrator. Article 12.2 of the MSA states:

> In the event any dispute, claim, question, difference or controversy arising out of or in connection with this Agreement, including regarding its formation, existence, validity, effects, interpretation, implementation, violation, resolution or annulment, or in respect of any legal relationship associated with or derived from his Agreement, shall be referred to and finally resolved by arbitration administered by the Hong Kong International Arbitration Centre (HKIAC) under the HKIAC Administered Arbitration Rules in force when the Notice of Arbitration is submitted, to the exclusion of any courts which may otherwise have jurisdiction.

MSA art. 12.2. The referenced HKIAC Administered Arbitration Rules states the "arbitral tribunal may rule on its own jurisdiction under these Rules, including any objections with respect to the existence, validity or scope of the arbitration agreement." 2024 HKIAC Administered Arbitration Rules art. 19.1.

The MSA's incorporation of the HKIAC rules, which clearly delegate arbitrability to the arbitrator, constitutes clear and unmistakable evidence of the signatories' intent to delegate arbitrability to the arbitrator. *See Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d

4

Cir. 2020) (holding arbitration agreement's incorporation of AAA rules, which in turn give the arbitrator the power to rule on jurisdiction, constitutes clear and unmistakable evidence that the parties agreed to delegate arbitrability).  Because the MSA clearly delegates the threshold question of arbitrability to the arbitrator, whether Ping An can enforce the arbitration agreement against Phoenix is a question for the arbitrator.

The Court is unaware of any Supreme Court or Third Circuit authority addressing the issue of whether a non-signatory may enforce a valid arbitration agreement against a signatory is a question of arbitrability.  The Circuits that have considered this issue, however, have all come to the same conclusion: it is.  *See Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844–52 (6th Cir. 2020) (holding whether nonsignatory could compel arbitration against signatory was a question of arbitrability, which was delegated to the arbitrator); *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 715 (5th Cir. 2017) (holding the same); *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) (holding whether non-signatory could compel signatory to arbitrate was a question for the arbitrator because arbitration agreement incorporated AAA Rules, which delegated arbitrability to the arbitrator); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 211 (2d Cir. 2005) ("[A]s a signatory to a contract containing an arbitration clause and incorporating by reference the AAA Rules, Remote Solution cannot now disown its agreed-to obligation to arbitrate all disputes, including the question of arbitrability."); *Apollo Comput., Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989) (holding whether non-signatories could enforce arbitration agreement against signatory was a question for the arbitrator because agreement incorporated ICC rules).

The arbitration clause of the MSA here incorporates the HKIAC rules.  The HKIAC rules give the arbitral tribunal the power to decide their jurisdiction.  Phoenix's argument that non-

5

signatories cannot enforce the arbitration agreement against it is a jurisdictional challenge to the parties of the arbitration.  Whether Ping An may avail themselves of arbitration against Phoenix is therefore a question of arbitrability reserved for the arbitrator.  *See Jackson v. Zep Mfg.*, No. 23-2622, 2024 WL 1175713, at *7 (E.D. Pa. Mar. 19, 2024) ("The question of whether [defendant], as a non-signatory, can enforce the Agreement is an issue pertaining to the enforceability, applicability, or interpretation of this Agreement and must be resolved by the arbitrator." (quotations and citations omitted)).

**CONCLUSION**

Accordingly, the Motion to Compel Arbitration is granted, and the parties are referred to arbitration as outlined in the MSA.  Pursuant to 9 U.S.C. § 3, this case shall be stayed pending the outcome of arbitration.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.